UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THURL MORRIS, JR.,

                              Plaintiff,

            v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.
_____

<u>DECISION AND ORDER</u>

17-CV-6129L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On May 3, 2012, plaintiff, then forty-five years old, filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging an inability to work since February 1, 2011. (Dkt. #8-2 at 13).[1] Those applications were initially denied. Plaintiff requested a hearing, which was held November 2013 before Administrative Law Judge ("ALJ") Jennifer Gale Smith. On January 21, 2013, the ALJ issued a decision finding plaintiff not disabled. (Dkt. #8-2 at 13-29). The Appeals Council denied review, and plaintiff commenced an action in this Court. Pursuant to a stipulation between plaintiff and the Commissioner, this Court entered judgment in favor of the plaintiff, remanding the matter for further administrative proceedings. (Dkt. #8-9 at 779-82).

---

[1] References to page numbers in the Administrative Transcript (Dkt. #8 et seq.) refer to the internal Bates-stamped numbers assigned by the parties.

A supplemental hearing was held on October 4, 2016 via videoconference. On December 23, 2016, the ALJ issued a second decision, again finding plaintiff not disabled. Plaintiff now appeals.

The plaintiff has moved, and the Commissioner has cross moved, for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, plaintiff's motion (Dkt. #11) is granted, the Commissioner's cross motion (Dkt. #13) is denied, and the matter is remanded for the calculation and payment of benefits.

## DISCUSSION

An ALJ applies a well-established five-step evaluation process to determine whether a claimant is disabled within the meaning of the Social Security Act, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

Here, the ALJ determined that plaintiff suffers from the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine; osteoarthritis; chronic obstructive pulmonary disease; dysthymia versus major depression; post-traumatic stress disorder ("PTSD"); and alcohol abuse. (Dkt. #8-6 at 662).

After reviewing of the evidence of record, the ALJ found that the plaintiff has retained the residual functional capacity ("RFC") to perform a range of work at the medium, light or sedentary exertional levels, with a number of limitations. Plaintiff can lift and carry up to 10 pounds frequently, 11-20 pounds frequently, and 21-50 pounds occasionally. He can sit for 6 total hours in an 8-hour workday, for up to 3 hours at a time; can stand for a total of 4 hours up to 2 hours at

a time; and can walk for 2 hours total, for up to 1 hour at a time. Plaintiff can occasionally reach overhead, and frequently reach in all other directions. He can occasionally push and pull up to the weight limits [specified for lifting and carrying]. He can frequently handle, finger and feel, and occasionally operate foot controls. Plaintiff cannot climb ladders, ropes or scaffolds, and can occasionally stoop, balance, kneel, crouch, crawl, work at unprotected heights and around moving mechanical parts. He should not work in extreme temperatures or around vibrations, and should have no more than occasional exposure to respiratory irritants, such as dusts, odors, fumes, gases and extreme temperatures. He can work only in a low-stress job defined as involving occasional decision-making, occasional use of judgment and occasional changes in the work setting. He should work at goal-oriented work rather than production pace rate work, and should have no more than occasional contact with coworkers, supervisors, and the public. (Dkt. #8-8 at 670).

When presented with this RFC, vocational expert Josiah L. Pearson testified that plaintiff could perform the positions of address clerk and document preparer. (Dkt. #8-8 at 688-89).

On appeal, plaintiff chiefly claims that the ALJ failed to properly consider the medical opinion evidence of record – particularly, that of plaintiff's treating psychiatrist, Dr. Martha E. Tymeson, to whom the ALJ gave "little" weight. (Dkt. #8-8 at 681). The Court concurs.

A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2). An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report is

reversible error. *See Snell v. Apfel*, 177 F.3d 128,1 34 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

Plaintiff is a United States Army veteran who served from 1980 to 1992, with combat experience in Desert Storm and Desert Shield. (Dkt. #8-7 at 466). Dr. Tymeson, plaintiff's treating psychiatrist at the Veterans Administration, rendered a mental RFC opinion dated July 1, 2013. (Dkt. #8-7 at 470-72). Dr. Tymeson noted plaintiff's diagnoses of major depressive disorder with insomnia, PTSD with irritability and nocturnal hyperarousal, and chronic pain as a complication of both conditions. Dr. Tymeson opined, among other things, that plaintiff had "marked" limitations (defined as a loss of function greater than 33%) in maintaining attention and concentration, performing activities within a schedule, and responding appropriately to stressors or workplace changes. Dr. Tymeson also found "extreme" limitations (defined as "no or very little useful ability to function") with respect to completing a workday without interruptions from symptoms, and opined that plaintiff's impairments would be expected to result in more than three absences per month. (Dkt. #8-7 at 470-72). In a subsequent form completed September 9, 2016, Dr. Tymeson reviewed her July 1, 2013 mental RFC assessment, and indicated that her opinion as to plaintiff's limitations had not changed. (Dkt. #8-13 at 1221).

The ALJ rejected Dr. Tymeson's opinion, deferring instead to that of consulting psychologist Dr. Robert J. Maiden, who examined plaintiff one time, on January 6, 2012. Dr. Maiden found plaintiff's eye contact to be "a bit bizarre . . . kind of a vacant stare," and observed that plaintiff appeared "apathetic," "long winded" and "unrealistic," telling "rather strange or bizarre" stories and seeming to have "stress-related problems." (Dkt. #8-7 at 465-69). Notwithstanding these observations, Dr. Maiden opined that plaintiff was able to understand

4

simple directions, perform simple tasks, attend and concentrate, make appropriate decisions, and relate adequately with others. *Id.*

In granting Dr. Tymeson's more restrictive opinion "little" weight, the ALJ found that it was "not well-supported by the scant chronically positive objective clinical findings noted on repeat mental status exams" and "inconsistent with other substantial evidence," such as an absence of evidence that plaintiff canceled or missed medical appointments, the fact that he was generally assigned high Global Assessment of Functioning ("GAF") scores by mental health care providers, and the fact that he had been recommended to attend group therapy. (Dkt. #8-8 at 683-84).

The ALJ's determination that Dr. Tymeson's opinion was not entitled to controlling weight failed to properly consider the bulk of the relevant factors, and is unsupported by the evidence of record. *See* 20 C.F.R. § 404.1527(d)(2). Dr. Tymeson is a psychiatrist who treated plaintiff on a routine basis beginning in May 2012. Her initial evaluation notes that it was performed with the benefit of a complete "review of [plaintiff's prior] medical record, especially the detailed notes by [case manager] Ms. Jones and telephone contact with [treating internist] Dr. Sandberg," as well as statements by plaintiff, who Dr. Tymeson judged to be "a cooperative and coherent historian." (Dkt. #8-7 at 398, 427).

Dr. Tymeson's treatment records consistently report that plaintiff's PTSD and depression symptoms include problems with alcohol abuse, sleep disturbance (sleeping only 3-4 hours per night), nightmares and delusions related to women and babies being terribly burned by the weaponry plaintiff used during his military service, uncontrollable anger and resentment, low energy, poor concentration and irritability. (Dkt. #8-7 at 398, 427-28). *Id.* Clinical observations of plaintiff include PTSD in only "partial control" (Dkt. #8-7 at 431), with plaintiff "irritated but cooperative, eye contact intermittent . . . affect constricted . . . mood bereaved and irritated". (Dkt.

5

#8-13 at 1211). On May 18, 2016, Dr. Tymeson reported that plaintiff had discontinued treatment with his primary therapist after June 5, 2014, and was feeling "major distress" at recent events in his life, but continued to present to Dr. Tymeson for psychiatric medication management, reporting that his "[d]epression worsened in late spring of 2014" and that a self-guided attempt by plaintiff to stop taking antidepressants had been abandoned after three weeks "out of frustration at how bad [plaintiff] was feeling; he became even more explosive [without medications] so he restarted them again." (Dkt. #8-13 at 1209). Dr. Tymeson's notes reveal a consistent history of uncontrolled moods, problems relating appropriately with others such as family members and a landlord, depression, anxiety, poor concentration, and sleep disturbances, all of which are logically connected with plaintiff's diagnoses of PTSD, anxiety and depression, and with the limitations Dr. Tymeson described in her opinion.

Dr. Tymeson's opinion concerning the severity of plaintiff's limitations is also consistent with other evidence of record, including a November 16, 2012 PTSD Assessment performed by Veterans Administration psychologist Deborah Marshall, who administered an objective test for PTSD and found plaintiff's results within the "clinically significant range for symptoms of PTSD." She noted that plaintiff's symptoms included recurrent and distressing recollections and dreams concerning combat-related traumatic events, difficulty falling and staying asleep, irritability and angry outbursts, difficulty concentrating, and hypervigilance. Effects included depressed mood, anxiety, suspiciousness, chronic sleep impairment, flattened affect, impaired judgment, mood disturbance, difficulty establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances including work settings, suicidal ideation, obsessional rituals which interfere with routine activities, and impaired impulse control. (Dkt. #8-7 at 625-36).

6

Plaintiff has also had several inpatient admissions related to alcohol dependence and PTSD. (Dkt. #8-7 at 336, 429). Plaintiff's case managers, including social workers Lauren May-Jones and Janine Alington, repeatedly noted that his PTSD symptoms included sleep disturbance, difficulty concentrating, hypervigilance, poor anger control and impulsivity, anxiety and failure to assimilate traumatic memories, all of which "affect[ed plaintiff's] daily functioning." (Dkt. #8-7 at 356-57, 361, 369-70, 374, 378-79, 423, 434). On several visits with his therapist, plaintiff reported increased nightmares and "daymares" including tasting and smelling burning flesh and visions of burning women and babies, difficulty with anger management, and thoughts of homicide and suicide. (Dkt. #8-7 at 360, 368, 426).

Plaintiff has also been found 100% disabled by the Department of Veterans Affairs. (Dkt. #8-12 at 955). While "[a] determination made by another agency regarding a claimant's disability is not binding on the Social Security Administration, 20 C.F.R. §404.1504, 'it is entitled to some weight and should be considered.'" *Claymore v. Astrue*, 519 Fed. Appx. 36, 38 (2d Cir. 2013) (quoting *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980)).

Given the consistency between Dr. Tymeson's opinion and the record as a whole, the ALJ erred in declining to give that opinion controlling weight, and the reason given by the ALJ for doing so – alleged inconsistency with a cherry-picked selection of excerpts from the record, and/or a lack of "chronologically positive objective clinical findings" – is vague and insufficient. *See Nasca v. Colvin*, 216 F. Supp. 3d 291, 298 (W.D.N.Y. 2016).

Remand for the purpose of calculation of benefits is warranted where the record demonstrates the claimant's disability, and where there is no reason to conclude that there is additional evidence to support the Commissioner's claim that a claimant is not disabled. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (where the existing record contains persuasive

proof of disability and a remand for further evidentiary proceedings would serve no purpose, a remand for calculation of benefits is appropriate); *Martinez v. Commissioner*, 262 F. Supp. 2d 40, 49 (W.D.N.Y. 2003) (same). That standard has been met here. While the RFC findings that were described in the ALJ's primary hypothetical to the ALJ were not, as discussed above, supported by substantial evidence, plaintiff's counsel *did* pose a hypothetical to the vocational expert which incorporated the limitations in attention and concentration, attendance and punctuality, etc., that Dr. Tymeson described. In answer to that hypothetical, the vocational expert testified that no jobs existed in the national economy which could be performed by such an individual. (Dkt. #8-8 at 737).

Based on the foregoing, the Commissioner has failed to meet her burden to set forth good reasons why the opinion of plaintiff's treating psychiatrist was not entitled to controlling weight, and/or to demonstrate that plaintiff can perform any work that exists in the economy. The record is clear that if the opinion of plaintiff's treating physician controls, there are no jobs in the national economy that plaintiff can perform. *See e.g.*, *Bogdan v. Colvin*, 2016 U.S. Dist. LEXIS 48478 (W.D.N.Y. 2016) (reversing and remanding for calculation of benefits where treating psychiatrist's opinion establishes disability as a matter of law). As such, additional proceedings would serve no proper purpose, and remand for the calculation and payment of benefits is warranted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. #11) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is denied.

The Commissioner's decision that plaintiff was not disabled is reversed, and the matter is remanded solely for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      June 28, 2018.